## GUILMARTIN v. PADGETT.

(Court of Civil Appeals of Texas.    Galveston.
May 11, 1911.    Rehearing Denied
June 15, 1911.)

1. TRESPASS TO TRY TITLE (§ 32*)—PETITION
—SUFFICIENCY.

A petition in trespass to try title which describes land sued for by setting out the field notes of a tract of 200 acres embracing the 100 acres sued for, and which then describes by metes and bounds the particular 100 acres, followed by the words, "Being the same tract of land and all of that tract of land" that a person named, "acting as attorney for defendant, had a wire fence constructed around the tract," is not bad on demurrer for describing three several tracts, but an objection to the petition must be by special exception for want of sufficiency of description or of conflicting descriptions.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 39–41; Dec. Dig. § 32.*]

2. TRESPASS TO TRY TITLE (§ 47*)—ACTIONS FOR SEVERAL TRACTS IN ONE SUIT—RECOVERY.

One may sue in trespass to try title for two or more tracts in one action, but, where he may recover under the evidence only one tract, the fact that he has sued for more does not prevent a recovery authorized by the evidence.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 69–71; Dec. Dig. § 47.*]

3. TRESPASS TO TRY TITLE (§ 32*)—PETITION—DESCRIPTION—SUFFICIENCY.

Where the description in the petition in trespass to try title correctly describes the land in controversy, other descriptions in the petition, though in conflict therewith, may be rejected.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 39–41; Dec. Dig. § 32.*]

4. TRESPASS TO TRY TITLE (§ 40*)—EVIDENCE—ADMISSIBILITY.

Where, in trespass to try title, defendant did not contend that one of the tracts of land described in the petition was not the tract sued for within a survey, deeds showing plaintiff's chain of title conveying larger tracts than the tract sued for were properly received in evidence, in the absence of any attempt to show that the larger tracts did not embrace the tract sued for.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 40.*]

5. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—GROUPING OF ASSIGNMENTS.

Assignments of error which relate to different phases of the evidence introduced on the trial cannot be grouped and presented over one proposition.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

6. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—STATEMENT.

An assignment of error complaining of the introduction of evidence, not followed by a statement from the record sufficient to support and explain the assignment, will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

7. APPEAL AND ERROR (§ 692*)—QUESTIONS REVIEWABLE—REJECTION OF EVIDENCE—BILL OF EXCEPTIONS.

A bill of exceptions to the rejection of evidence which fails to state what the party com-

plaining would have proved had his witness been permitted to testify does not authorize an appellate court to review the exclusion of the testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2905–2909; Dec. Dig. § 692.*]

8. APPEAL AND ERROR (§ 206*)—REJECTION OF EVIDENCE — OFFER OF PROOF — SHOWING PURPOSE.

Where the bill of exceptions to the rejection of evidence shows what the testimony would have been had the witness of the party complaining been permitted to testify, but at the time of the taking of the bill the court was not apprised of what was expected to be proved by the witness, the court on appeal will not review the ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1283–1289; Dec. Dig. § 206.*]

9. APPEAL AND ERROR (§ 742*)—QUESTIONS REVIEWABLE — ASSIGNMENT OF ERROR — STATEMENT.

Where the statement following a proposition under an assignment of error complaining of the admission of evidence of the general reputation of the person for truth and veracity did not show that the person had testified in the case, or that any bill of exceptions was reserved to the admission of the testimony, the statement was not sufficient to support the assignment, and the ruling was not reviewable on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

10. TRESPASS TO TRY TITLE (§ 41*)—TITLE OF PLAINTIFF—EVIDENCE—SUFFICIENCY.

In trespass to try title, evidence held to justify a finding that the owner died possessed of the land sued for, and that it passed by inheritance to his children, and that plaintiff acquired the title of the heirs, justifying a recovery.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

11. TRESPASS TO TRY TITLE (§ 47*)—TITLE OF PLAINTIFF—EVIDENCE—SUFFICIENCY.

Where, in trespass to try title, the evidence showed that the owner died possessed of the land, leaving a wife and seven children, two of whom died leaving children surviving, and that plaintiff obtained a deed from the five surviving children of the original owner, but not the title of the surviving children of the deceased children of the owner, plaintiff could recover only five-sevenths of the land.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 47.*]

12. APPEAL AND ERROR (§ 1153*)—DISPOSITION OF CAUSE ON APPEAL—CORRECTION OF ERRONEOUS JUDGMENT.

Where, in trespass to try title, the trial court rendered judgment for plaintiff for the whole of the land, though the evidence showed his ownership of only five-sevenths thereof, the court on appeal will not reverse the judgment, but will render the proper judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4507–4512; Dec. Dig. § 1153.*]

Appeal from District Court, Sabine County; W. B. Powell, Judge.

Action by E. P. Padgett against J. F. Guilmartin. From a judgment for plaintiff, defendant appeals. Affirmed in part, and reversed and rendered in part.

Davis & Davis, for appellant. E. P. Padgett, pro se.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

McMEANS, J. This is a suit of trespass to try title brought by appellee, Padgett, against appellant, Guilmartin, to recover the title and possession of 100 acres of land, part of the William Clark survey in Sabine county. The plaintiff in describing the land sued for first set out the field notes of a tract of 200 acres which embraced the land sued for, then described by metes and bounds the particular 100 acres which he sought to recover in this suit, and to this description was added: "Being the same tract of land and all of that tract of land that Davis & Davis, of San Augustine county, Texas, acting as attorneys of defendant, John F. Guilmartin, had a wire fence constructed around said tract of land in the year 1907." The defendant answered by general demurrer, general denial, and plea of not guilty. The case was tried before the court without a jury, and resulted in a judgment for plaintiff Padgett for the 100 acres of land particularly described in the petition, from which judgment the defendant, Guilmartin, has appealed.

The trial judge upon proper request reduced to writing and filed his findings of fact and conclusions of law, which are as follows:

"(1) The Wm. Clark survey, of which the land in controversy is a part, was titled to Wm. Clark by the Mexican government on —— day of June, 1835.

"(2) That Wm. Clark conveyed the land in controversy to his son, Elijah Clark, on the 12th day of October, 1838.

"(3) I find that Wm. and Elijah Clark and their wives are all dead; that Elijah Clark died in 1857, and his wife, who was Jane Ashmore, died in 1863.

"(4) I find that the 100 acres of land in dispute is the north part of the tract of land on which Elijah Clark lived at the time of his death and lying north of Pologoche creek.

"(5) I find: That Elijah Clark contracted to sell this 100 acres of land to his brother-in-law, Pascal Ashmore. That Ashmore was to be a neighbor to him and to pay him $1 an acre for the land.

"(6) That Ashmore moved on the land, built a small log house, and cleared four or five acres of land. That he lived there about a year, when he and his wife parted and left the place. That the house he built was about one-fourth of a mile from Elijah Clark.

"(7) That soon after Pascal Ashmore and his wife parted and left the place Elijah Clark died. That he never made a deed to Ashmore to the place, and that Ashmore never paid for same.

"(8) That after Ashmore left the place he sold his improvements to Colon McRae for store account he owed him. That no deed was ever made by Ashmore to McRae as he sold his improvements only.

"(9) I find that the widow of Elijah Clark lived on the place at which he died from 1857 to 1863, when she died, and their children lived there until 1867, when Elias Clark, the last to leave, went to where he now lives, some two or three miles from the place.

"(10) I find that Elijah Clark's widow always claimed the land, because it had never been paid for, and that the Clark heirs have claimed the land ever since their mother's and father's death.

"(11) I find that Elias Clark has lived in two or three miles of the land ever since his father's death, and that Lewis Clark lived 20 or 25 years after his father's death in Sabine county; that none of the Clark heirs nor any one else ever lived upon the land in controversy; that the place was known and called the Ashmore old place for a long time, and is still called by some as the Ashmore old place, but for 20 or 30 years it is generally called the Burroughs land.

"(12) I find that Elijah Clark had seven children, and that said children or their heirs, so far as have been heard from within seven years, conveyed the land involved in this suit to E. P. Padgett; that the heirs of Elijah Clark are poor people, except Elias Clark, who was able to pay taxes on his part, but did not do so, because his interest was so small he was not justified in paying on the whole.

"(13) In 1850 Elijah Clark rendered 592 acres for taxes on the Wm. Clark headright. In 1851 to 1857, inclusive, the Clarks rendered 432 acres. In 1858, 333 acres, in 1861, 1863, 1864 Jane Clark rendered 333 acres. Since 1867 the only land rendered by any Clarks in said Clark survey did not exceed 190 acres.

"(14) I find that in 1861 J. H. McRae rendered for taxes 200 acres of the Wm. Clark survey. In 1862 H. C. Hicks rendered 200 acres. In 1868 H. C. Hicks rendered 100 acres. From 1869 to 1891 J. J. Burroughs rendered 200 acres, from 1891 to 1908 J. J. Burroughs or Guilmartin rendered 100 acres.

"(15) I find the heirs of Elijah Clark partitioned and sold out their father's old homestead lying south of the 100 acres in controversy, but the 100 acres in controversy was never divided amongst them.

"(16) I find that H. C. Hicks sold and conveyed the land in controversy to J. M. Burroughs October 10, 1869, and that J. H. McRae had previously sold and conveyed it to H. C. Hicks.

"(17) I find that Colon McRae, J. H. McRae, H. C. Hicks, and J. M. Burroughs are all dead, that J. M. Burroughs left a will bequeathing his estate to his brothers and sisters, and that the will was duly probated, and that J. F. Guilmartin has a regular chain of title by mesne conveyances from executors of the will of J. M. Burroughs down to and into himself.

"(18) I find that J. F. Guilmartin put a wire fence around this land after E. P. Padgett had bought it, which is the only actual possession of the land attempted by any one since Pascal Ashmore moved off.

GUILMARTIN v. PADGETT

"I conclude as the land was never paid for by Pascal Ashmore, and no deed was ever made to it by Elijah Clark to Pascal Ashmore, nor from Ashmore to Colon McRae, nor Colon McRae to J. H. McRae, the defendant has no title to the land. I conclude, as Elijah Clark died possessed of the title to the land sued for, that it passed by inheritance to his children, and their deed to E. P. Padgett put the title to the 100 acres in E. P. Padgett. And I therefore find in his favor for said land."

[1] Appellant, by his first assignment of error, complains of the action of the court in overruling his general demurrer to plaintiff's petition, the complaint being that the petition was wholly insufficient because it describes the land sued for in three several ways, and that the descriptions are conflicting and each describes a different tract, and that there was no allegation as to which of the several descriptions was the correct description of the land sued for. We think this assignment is without merit. No special exception to the petition for want of sufficiency of description or of conflicting descriptions was presented. Granting that the petition described three several tracts, as claimed by appellant, this did not make the petition bad on general demurrer.

[2] A plaintiff may sue a defendant for two or more tracts of land in one suit; yet, if the testimony shows that he is entitled to recover only one, the fact that he sued for more than he shows himself entitled to recover would not militate against his right to recover the one tract to which he might establish title in himself.

[3] Again, if the description of the 100-acre tract correctly described the land in controversy, the other descriptions, even if in conflict therewith, may be rejected. Bayne v. Denny, 21 Tex. Civ. App. 435, 52 S. W. 984. The assignment is overruled.

[4] The second, third, fourth, and fifth assignments complain of the admission in evidence, over defendant's objection, of certain deeds and muniments of title in the chain of plaintiff's title from the sovereignty down to himself, the gravaman of the complaint, as contained in appellant's propositions following these assignments, being that: "The petition should describe the land as it is situated on the ground; and, where several descriptions are set out in the petition describing different tracts of land, there should be an allegation as to which is the correct description of the land sued for, and the proof should correspond with and support the allegation so made." It is not contended that one of the tracts of land described in the petition is not the tract sued for, nor that the land sued for is not a part of the Wm. Clark survey, nor does appellant, in his statement following the proposition, undertake to show that the testimony so offered did not correspond with the allegations of plaintiff's petition further than some

of the deeds conveyed larger tracts of land than the tract here sued for; and it is not attempted to be shown that these larger tracts did not embrace the 100-acre tract involved in this suit. No error is pointed out by the assignments and each of them is overruled.

[5, 6] Assignments numbered 6 to 19, inclusive, are grouped and presented over one proposition. These assignments relate to different phases of the evidence introduced on the trial and cannot properly be grouped. In addition to this, the assignments are not followed by a statement from the record sufficient to support and explain them. For these reasons, the assignments will not be considered.

The twentieth and twenty-first assignments relate to the exclusion of certain testimony offered by defendant on the trial. The defendant was attempting to prove a declaration against interest made by one of plaintiff's predecessors in title, who at the time of the trial was dead. A witness was asked the question, "Did you ever have any conversation with any of the Clarks with reference to their claim to the land?" to which the witness answered: "Yes; I did with Paschall Clark once." The plaintiff objected to this question and answer on the ground that Paschall Clark was dead, and this objection was sustained by the court, and to this the defendant took his bill of exceptions. No statement was made by the defendant at the time of taking the bill of the facts he expected to prove by the witness, or that he expected to prove anything further than that established by the answer elicited; that the witness had once had a conversation with the deceased Clark relative to the claim of the land by the Clarks without his further testimony of what was stated by Paschall Clark in that conversation was wholly immaterial. After the trial defendant's attorney prepared a bill of exceptions embracing the question and answer above set out, and then, for the first time, stated what he would have proved by the witness had not the objection been sustained. This is shown by the court's qualification of the bill. This testimony was of vital importance to defendant, and its rejection, had it been properly offered, would constitute reversible error.

[7] It has been too often held to require citation of authority that where the bill of exceptions to the rejection of evidence fails to state what the complainant would have proved had the witness been permitted to testify is not sufficient to authorize an appellate court to revise an alleged error predicated on the action of the court in excluding the testimony.

[8] We think the same rule should be applied in cases such as this, where the bill of exceptions shows, as this did, what the testimony would have been had the witness been permitted to testify, but where, at the time of taking the bill, the court was not apprised

of what was expected to be proved by the witness. Fairness to the trial court and to opposing counsel demands that such statement then be made in order that the court may know the relevancy and materiality of the evidence which the party desires to introduce, and it would manifestly be unjust to opposing counsel and unfair to the court to refrain from making the statement at the time the objection and ruling are made, and then after the trial to incorporate it in the bill of exceptions and in this way for the first time apprise the court and opposing counsel of what the witness would have testified had he been permitted.

The court permitted plaintiff to prove by the witness W. S. Arthur, over the objections of defendant, that Elias Clark, plaintiff's witness and vendor, bore a good general reputation for truth and veracity in the community in which he lived. The objection of defendant to this testimony was "because it was wholly immaterial as to what was the reputation of Elias Clark in this community." Appellant by his proposition under the twenty-second assignment, which presents the point, asserts that "proof of the general reputation of a witness for truth and veracity in the community where he resided and was best known is not admissible unless the character of such witness for truth and veracity has been attacked, and the fact that such witness had made statements which were contradicted would not authorize the introduction of such proof."

[9] It may be conceded that the proposition correctly states an abstract legal principle, but we are constrained to refuse to consider the assignment because the proposition is not germane to the assignment as explained by the statement, and because the statement following it is wholly insufficient to enable us to determine whether the testimony complained of was, in fact, offered, or whether it was prejudical. It did not even show that the witness had testified in the case, or that any bill of exception was reserved to the action of the court in admitting the testimony; in short, the statement is wholly insufficient to support and explain the assignment as the rules require. The statement in full is as follows: "The assignment states the matter fully. The proof shows that Elias Clark resided west of Hemphill, where the case was tried, several miles, in a different community. The questions did not inquire about his general reputation, nor his reputation in the community where he resided and was best known."

[10] Appellant's twenty-third assignment attacks the judgment rendered in the court below on the ground that it is not supported by the evidence and is in direct conflict with the proof. The evidence in the record justifies the following fact conclusions: The land in controversy is a part of a tract of land titled to Wm. Clark by the Mexican government in June, 1835. On October 12, 1838,

Wm. Clark conveyed a part of his headright survey, which included the land in controversy, to his son Elijah Clark. Appellee claims title through deeds executed to him by certain of the heirs of Elijah Clark. About the year 1853, Elijah Clark contracted to sell to his brother-in-law, Pascal Ashmore, 100 acres of land, being the land in controversy, the consideration being that Ashmore would pay $1 per acre for the land, and move onto the tract and be a neighbor of Elijah Clark. Acting under this contract, Ashmore built a small log house or hut on the land, cleared up a few acres, which he partially fenced, and with his wife moved on the land and lived there a little more than a year, when he and his wife separated and both moved off and abandoned the land. The contract between Ashmore and Elijah Clark was verbal, and Clark never executed any deed or other conveyance of the land to Ashmore. Elijah Clark died soon after Ashmore left the place and his wife died in 1863. While the testimony is meager, we think it sufficient to support the court's conclusion that Ashmore never paid for the land. There was never any active assertion of title by any of the Clarks after Ashmore moved off the place untill about the time plaintiff purchased the land, but the Clarks believed that the land had not been paid for by Ashmore, and some of them were openly claiming the land as far back as 25 or 30 years ago. They never paid taxes on it, however, after Ashmore went into possession. When Ashmore moved off the land, he sold his improvements thereon to Colon McRae, but made him no deed to the improvements or to the land. On October 10, 1869, H. C. Hicks sold the land in controversy to J. M. Burroughs, reciting in the deed that it was the same land that J. H. McRae had previously sold to Hicks. There was no proof offered to show that the title was ever in J. H. McRae, and none to show a conveyance by McRae to Hicks except the recital in the deed above mentioned. Burroughs died, leaving a will which was duly probated, and defendant Guilmartin claims the land by mesne conveyances from the executors of Burroughs' estate. The land was rendered for taxes in 1861 by J. H. McRae, and in 1862 and 1868 by H. C. Hicks, from 1869 to 1891 by Burroughs, and from 1891 to 1908 by Burroughs or Guilmartin. No one has ever had actual possession of the land or any part of it from the time Ashmore moved off until after appellee Padgett bought it, when appellant inclosed it with a wire fence. We think these findings justify the court's conclusion of law that "Elijah Clark died possessed of the land sued for, and that it passed by inheritance to his children," and we conclude, also, that appellee, Padgett, by his deeds, acquired the title of such of the heirs of Elijah Clark as executed conveyances to him. What we have said in disposing of the twenty-third assignment applies also to the twenty-fourth, twenty-fifth, twenty-

sixth, and twenty-seventh assignments, which, with their several propositions, are overruled. The twenty-eighth and thirtieth assignments have been examined by us, and we are of opinion that neither of them points out any reversible error, and they are overruled.

[11] By the twenty-ninth assignment appellant complains that the court erred in the twelfth paragraph of its findings of fact to the effect that the heirs of Elijah Clark had conveyed the land in controversy to the appellee, Padgett. He contends that this finding is in direct conflict with the evidence offered on the trial by the plaintiff, which shows that plaintiff did not buy the interest of two of the seven heirs of Elijah Clark.

This assignment must be sustained. The evidence shows that Elijah Clark and his wife left seven children, two of whom were Martha Bedo and Susan Clark, both of whom died leaving children surviving them, and that these survivors did not join in the conveyance of the land to Padgett. Thus standing, Padgett has the title of five of the seven original heirs of Elijah Clark only, and is therefore entitled to recover only five-sevenths of the land instead of the whole, as awarded to him by the judgment.

[12] This error will not render a reversal of the judgment necessary, however, for such judgment will be rendered here as should have been rendered in the court below.

It is therefore ordered that judgment be here rendered in favor of appellee Padgett for an undivided five-sevenths of the land in controversy, and that said judgment denying appellant Guilmartin recovery of any of said land be reversed and judgment be here rendered in his favor for a two-sevenths undivided interest in said land.

Affirmed in part, and reversed and rendered in part.